## C. George Armstrong, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 58400.   Promulgated October 25, 1934.

*Frederick C. Rowherder, C. P. A.*, for the petitioner.
*Dean P. Kimball, Esq.*, for the respondent.

### OPINION.

Arundell: This proceeding involves a deficiency in income tax in the amount of $9,760.61 for the year 1928. The deficiency was computed on the theory that the cash received by petitioner for his class A stock of the Chelmsford Co. exceeded the basis by $79,593.09, and that that sum represented taxable gain. In the petition filed the basis used by respondent was alleged to be erroneous. By amended answer respondent alleges that the total consideration received by petitioner on the exchange exceeded the basis by $193,433.17 and that the entire amount thereof represents taxable income. The basis of Chelmsford Co. stock was stipulated, leaving for decision two questions—first, whether there was a reorganization which would limit the taxable gain to petitioner on an exchange of stock for stock and cash, and, second, whether the exchange of two classes of stock should be treated as separate exchanges or one.

According to the stipulated facts, on December 20, 1928, the Chelmsford Co. had outstanding these three classes of stock: class A preferred, $25 par, 19,370 shares; first preferred, $100 par, 1,130 shares; class B, no par, 25,018 shares. The class A preferred and first preferred were preferred in the distribution of assets up to the par value of the stock and accumulated dividends before any distribution could be made to class B stockholders. Petitioner owned Chelmsford Co. stock as follows:

|  | Class A shares | Cost | Class B shares | Cost |
|---|---|---|---|---|
| Owned over two years | 8,308 | $217,925.02 | 18,037 | $43,475.65 |
| Owned less than two years | 458 | 9,680.00 | 1,056½ | 38,837.50 |
| Total | 9,766 | 227,605.02 | 19,093½ | 82,313.15 |

On November 28, 1928, the Chelmsford Co. entered into an agreement with Canada Dry Ginger Ale, Inc. (hereinafter called Canada Dry), whereby the Chelmsford Co. agreed to transfer all its assets to Canada Dry in exchange for 4,473 shares of capital stock of Canada Dry and $606,250 in cash, that amount of cash being the liquidating value of the Chelmsford class A preferred and first preferred stocks. It was further agreed that the Chelmsford Co. was to distribute to its stockholders, in liquidation, the cash and Canada Dry stock to be received from Canada Dry; further, that the Chelmsford Co. was to dissolve. Canada Dry agreed to assume the liabilities of the Chelmsford Co., with certain exceptions not here material.

The agreement was carried out on December 20, 1928. On the same date the Chelmsford Co. distributed to the holders of its class A preferred and first preferred stocks, in cash, the liquidating values thereof plus accumulated dividends. On the same date it distributed to its class B stockholders a dividend of 86.722 cents per share in cash and the Canada Dry stock pro rata. At the same time the stockholders of the Chelmsford Co. surrendered their stock to that company. The above related actions were duly authorized and approved by formal votes of the Chelmsford Co. directors and stockholders, and it was further formally voted to dissolve the Chelmsford Co. and it was dissolved on or about December 31, 1928.

In the distribution of December 20, 1928, petitioner received the following cash and stock of Canada Dry:

|  | Cash | Shares of stock |
|---|---|---|
| For Class A stock owned more than two years | $209,714.69 | |
| " " " " " less " " " | 11,561.06 | |
| Subtotal | 221,275.75 | |
| For Class B stock owned more than two years | 15,641.68 | 3,224.06 |
| " " " " " less " " " | 1,353.27 | 278.94 |
| Subtotal | 16,994.95 | 3,503.00 |
| Total received | 238,270.70 | 3,503.00 |

In the agreement between the Chelmsford Co. and Canada Dry it was stated that Canada Dry proposed to organize a new corporation, all of whose stock it was to own, to take over the assets and conduct the business of the Chelmsford Co. Immediately after acquisition of the Chelmsford Co.'s assets, Canada Dry transferred them to a newly organized corporation, the Chelmsford Ginger Ale Corporation, in which Canada Dry owned all of the capital stock.

On December 20, 1928, following consummation of the transaction with the Chelmsford Co., Canada Dry had outstanding 508,858 shares of stock. The 4,473 shares of stock issued to the Chelmsford

Co. were purchased in the open market by Canada Dry between November 28 and December 20, 1928, at a value [so stipulated] of $80 per share.

The fair market value of the Canada Dry stock acquired by petitioner on December 20, 1928, was $76.125 per share. Petitioner keeps his records and files his income tax returns on the cash receipts and disbursements basis.

We think it beyond serious dispute that the transaction between the Chelmsford Co. and Canada Dry constituted a reorganization within the meaning of section 112 (i) (1) of the Revenue Act of 1928. It was an acquisition by one corporation of " all the properties of another corporation " in which a substantial part of the consideration was represented by stock which went to the old stockholders, thereby maintaining a continuity of stock interest. The transaction at least " partakes of the nature of a merger." *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462. The respondent originally determined that there was a reorganization and computed the deficiency accordingly. To support his present position he argues that so large a portion of Chelmsford stock was " sold " as to preclude the transaction from being treated as a reorganization. This does not appear to be the case. The stock was not sold. It was turned in, the holders of the preferred receiving the liquidating value thereof, and the holders of common stock receiving part cash and part stock of Canada Dry. Nor is it material that Canada Dry transferred the Chelmsford Co.'s asests to another corporation. *Tulsa Oxygen Co.*, 18 B. T. A. 1283; *First National Bank of Champlain*, 21 B. T. A. 415. Canada Dry was a " party to a reorganization " and petitioner received its stock in exchange for his common (class B) stock of Chelmsford, hence the recognition of his gain is limited by the provisions of section 112 (c) (1) of the 1928 Act.

The respondent earnestly urges that the liquidation of the preferred stock and the exchange of class B for stock and cash should be treated as a single transaction and the consideration treated as a lump sum. We cannot agree with this view. The preferred stocks were essentially different from the class B and they were treated differently in the reorganization. Had the petitioner owned but one class it would be difficult, to say the least, to apply to him the method proposed by the respondent. We had a similar situation in *A. W. Leonard*, 21 B. T. A. 549, in which we held that the different classes of stock should be treated as separate properties, saying in part:

Prior to the reorganization each petitioner owned two distinct classes of property, namely, common stock and preferred stock. Under the provisions of the revenue act, each had a separate basis upon which to compute gain or loss. If either or both were sold, profit would be computed upon such separate basis.

The rule of the *Leonard* case is applicable here. The cases cited by respondent are distinguishable. In *Elizabeth Bruce*, 30 B. T. A. 80, two parcels of the same kind of stock were involved. We held that the disposition of the two parcels was part of one reorganization transaction and should be treated as but a single exchange. *First Seattle Dexter Horton National Bank et al., Executors*, 27 B. T. A. 1242, likewise involved but one class of stock.

We accordingly hold that the cash received by petitioner upon the surrender of his preferred stock cannot be used as a measure of the gain on his class B stock. No loss is claimed on the preferred stock and we do not pass on that matter. We further hold that the gain on the class B stock may not be recognized in an amount in excess of the cash received, $16,994.95.

*Decision will be entered under Rule 50.*